# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

PATRICIA MARQUES
MACHADO and RICARDO
BATISTA DE MORAES,

      **Plaintiffs,**

v.                                      Case No: 6:24-cv-1262-PGB-EJK

ALEJANDRO MAYORKAS, UR
MENDOZA JADDOU and
CONNIE NOLAN,

      **Defendants.**

_____/

## **ORDER**

This cause is before the Court upon Plaintiffs Patricia Marques Machado and Ricardo Batista De Moraes's ("**Plaintiffs**") Motion for Temporary Restraining Order (Doc. 23 (the "**Motion**")). Upon due consideration, Plaintiffs' Motion is granted in part. The Court grants Plaintiffs' request for a temporary restraining order and defers its ruling on the request for a preliminary injunction.[1]

---

[1] Although Plaintiffs title their filing as a Motion for Temporary Restraining Order, Plaintiffs also request a preliminary injunction throughout the body of the Motion. (*See* Doc. 23). The Court, however, defers its ruling on the request for a preliminary injunction on procedural grounds. Under Federal Rule of Civil Procedure 65(a)(1), "the court may issue a preliminary injunction only on notice to the adverse party." Although Plaintiffs have certified their *attempts* to notify Defendants of their Motion, they have yet to confirm that Defendants have indeed received notice. *See Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (explaining that "the nonmoving party must have notice and an opportunity to present its opposition to the injunction" and that "the sufficiency of notice 'is a matter left within the discretion of the trial court'" (citations omitted)); *see also* Local Rule 6.02(c) (providing Defendants the right to respond to a motion for a preliminary injunction). Consequently, Plaintiffs' request for a preliminary injunction is not yet ripe for the Court's review. *See infra* Section IV.

I.  **BACKGROUND**

Plaintiff Patricia Marques Machado ("**Mrs. Machado**") and her spouse, Plaintiff Ricardo Batista De Moraes ("**Mr. Moraes**"), are natives and citizens of Brazil. (Doc. 1, ¶¶ 1–2). On March 16, 2021, Mrs. Machado's initial employer, Holding Ventures International LLC, filed a Form I-140 Immigrant Petition for Alien Worker ("**I-140 petition**") on behalf of Mrs. Machado with U.S Citizenship and Immigration Services ("**USCIS**"). (*Id*. ¶ 23).

Since the I-140 petition was filed on Mrs. Machado's behalf, she is the "principal applicant," and Mr. Moraes, her spouse, is a "derivative beneficiary." (*Id*. ¶ 2). Once an I-140 petition is filed, applicants and their derivative beneficiaries may file their Form I-485 Application to Adjust Status ("**I-485 application(s)**").[2] (Doc. 23, p. 11). Accordingly, upon the filing of the I-140 petition, Mrs. Machado and Mr. Moraes concurrently filed their I-485 applications with USCIS. (Doc. 1, ¶ 24).

On June 22, 2022, USCIS' Los Angeles County Field Office issued a Notice of Intent to Deny ("**NOID**") Mrs. Machado's I-485 application, alleging that Mrs. Machado "misrepresented her marital status on her previous non-immigrant visa application."[3] (*Id*. ¶ 25). In the NOID, USCIS provided Mrs. Machado with the

---

[2]  *See* DEP'T OF HOMELAND SEC., U.S. CITIZENSHIP & IMMIGR. SERVS., OMB NO. 1615-0023, INSTRUCTIONS FOR APPLICATION TO REGISTER PERMANENT RESIDENCE OR ADJUST STATUS (2024), https://www.uscis.gov/sites/default/files/document/forms/i-485instr.pdf.

[3]  The previous non-immigrant visa application was for a tourist visa, which Mrs. Machado applied for on June 8, 2011. (Doc. 1, ¶ 61).

opportunity to respond on or before September 23, 2022. (*Id.* ¶ 27). Mrs. Machado submitted her response on September 14, 2022.[4] (*Id.* ¶ 28). Therein, Mrs. Machado explained that in her previous non-immigrant visa application from 2011, she represented that she was married because she was in a common law marriage in Brazil and believed that "she was married for all legal purposes."[5] (Doc. 23, pp. 18–19). In support, Mrs. Machado attached a copy of her divorce contract, which confirmed her common law marriage from 2010 to 2017 with her former spouse, as well as an affidavit explaining the validity of a common law marriage in Brazil. (*Id.*; Doc. 1, ¶¶ 58–59, 63). Nonetheless, USCIS denied Plaintiffs' I-485 applications on the grounds that it had not received a response to the NOID, and thus, it considered the applications abandoned. (Doc. 1, ¶¶ 28–29).

On October 6, 2022, USCIS *sua sponte* reopened Mrs. Machado's I-485 application and acknowledged receipt of her NOID response. (*Id.* ¶¶ 31–32). USCIS did not reopen Mr. Moraes's I-485 application. (*Id.*). However, on October

---

[4] Plaintiffs allege they have a receipt of delivery provided by the United States Postal Service. (Doc. 23, p. 16).

[5] In the Complaint and Motion, Plaintiffs explain that a common law marriage is considered equivalent to a civil marriage in Brazil. (Doc. 1, ¶¶ 60–64; Doc. 23, pp. 17–18). However, it is unclear whether Plaintiffs represent that USCIS considers the two as equivalent for immigration purposes. (*See* Doc. 1, ¶ 65 ("Mrs. Machado did not know that for U.S. immigration purposes, it was incorrect that she indicated she was married on her non-immigrant visa application."). *But see* Doc. 23, p. 18 ("The [sic] Dept. of State via their U.S. Visa reciprocity webpage corroborate that in Brazil, a common law marriage does exist, specifically '*a Stable Union Contract (Contrato de União Estável) registered with the Civil registry (Cartório de Registro Civil das Pessoas Naturais) is considered to be a Common Law marriage in Brazil and is recognized for immigration purposes.* [ . . .]'" (citing U.S. DEP'T OF STATE, BUREAU OF CONSULAR AFFS., BRAZIL: RECIPROCITY SCHEDULE, https://travel.state.gov/content/travel/en/us-visas/Visa-Reciprocity-and-Civil-Documents-by-Country/Brazil.html))). Nonetheless, at this procedural stage, the Court need not address USCIS' policy regarding marital statuses.

3

13, 2022, Plaintiffs filed I-290B Form Motions ("**I-290B motion(s)**") to reopen their I-485 applications and to challenge USCIS' previous denial of their I-485 applications. (*Id.* ¶ 30). A few months later, on March 29, 2023, USCIS denied Plaintiffs' I-290B motions, asserting that it never received a response to the NOID. (*Id.* ¶ 34). Since then, Plaintiffs' counsel has submitted several inquiries and correspondence to "notify USCIS of their continuous procedural errors," along with a Form G-28 Notice of Entry of Appearance as Attorney. (*Id.* ¶¶ 35–36). Up until April of 2024, Plaintiffs had not received any further updates or communications from USCIS. (*Id.* ¶ 35).

Then, on April 15, 2024, USCIS reaffirmed its denial of Mrs. Machado's I-485 application because of the alleged misrepresentation in her previous non-immigrant visa application. (*Id.* ¶ 37). USCIS did so even though Mrs. Machado submitted evidence in rebuttal to the alleged misrepresentation in her NOID response. (*Id.* ¶¶ 58–59, 63; Doc. 23, pp. 17–19). On the next day, April 16, 2024, Mr. Moraes's I-485 application was reopened—and remains open—according to USCIS' case status tool. (Doc. 1, ¶ 78).

Because USCIS reaffirmed its denial of Mrs. Machado's I-485 application, she has been unable to obtain her U.S. permanent residency, and consequently, she has been unable to start her employment. (*Id.* ¶ 98). Thus, Mr. Moraes has been the sole financial provider for Plaintiffs' household. (Doc. 23, p. 10; Doc. 23-2, pp. 2–3). Plaintiffs' financial burdens have increased as Mrs. Machado is battling cancer and Mr. Moraes is paying for her treatment. (*Id.*). Ultimately,

4

Plaintiffs assert that if USCIS reaffirms its denial of Mr. Moraes's I-485 application, Mr. Moraes will no longer be able to legally work in the U.S., which will result in "severe economic and health harm that are irreparable." (*See id.*).

In light of these impending harms, Plaintiffs initiated this action on July 11, 2024, against Defendants Secretary of the Department of Homeland Security Alejandro Mayorkas; USCIS Director Ur Mendoza Jaddou; and USCIS Associate Director Connie Nolan (collectively, "**Defendants**"). (Doc. 1 (the "**Complaint**")). Specifically, Plaintiffs allege that in reaching its decision to reaffirm denial of Mrs. Machado's I-485 application, USCIS violated the Administrative Procedure Act ("**APA**")—specifically, 5 U.S.C. § 706(2)(A) and (D)—and the Due Process Clause. (*Id.* ¶¶ 45–100).

Thereafter, from July 15, 2024 to August 19, 2024, Plaintiffs filed a series of motions requesting injunctive relief. (Docs. 7, 13, 17, 21). The Court denied each of these motions, without prejudice, due to Plaintiffs' failure to comply with the procedural requirements for injunctive relief. (Docs. 16, 20, 22). Ultimately, on September 10, 2024, Plaintiffs filed the instant Motion for Temporary Restraining Order in compliance with the procedural requirements. (Doc. 23). Therein, Plaintiffs request a temporary restraining order preventing USCIS from reaffirming its denial of Mr. Moraes's I-485 application and "employment authorization document until this federal litigation is finalized to allow Mr. Moraes to keep working legally in the U.S." (*Id.* at pp. 10, 26).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(b)(1) authorizes a court to issue a temporary restraining order where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Moreover, Local Rule 6.01 sets forth a series of requirements regarding temporary restraining orders.

To obtain a temporary restraining order, a movant must show: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of a restraining order; (3) that the harm suffered by Plaintiffs in the absence of a restraining order would exceed the harm suffered by Defendants if the restraining order issued; and (4) that a restraining order would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *see also* Local Rule 6.01(b).

Further, temporary restraining orders are "extraordinary and drastic remed[ies] not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). Ultimately, issuing a temporary restraining order should be "the exception rather than the rule." *Id.*

6

## III. DISCUSSION

Here, after several attempts, Plaintiffs have satisfied the procedural requirements for a temporary restraining order under Federal Rule of Civil Procedure 65 and Local Rule 6.01.[6] (*See* Docs. 23, 23-1, 23-2). Plaintiffs have also established the four (4) elements to warrant a temporary restraining order. (*See id.*). The Court analyzes each element in turn.

### A. Substantial Likelihood of Success on the Merits of the Underlying Case

First, Plaintiffs have shown a substantial likelihood of success on the merits of their APA claim.[7] Plaintiffs claim that USCIS' "denial of Plaintiffs' I-485 applications, despite the acknowledgment of the NOID response in Mrs. Machado's case, constitutes an arbitrary, capricious, and abusive exercise of discretion" under the APA. (Doc. 23, p. 17).

---

[6] The Court notes that the one requirement Plaintiffs fail to address is the security requirement set forth in Federal Rule of Civil Procedure 65(c) and Local Rule 6.01(a)(4). However, because "the amount of security required by [Rule 65] is a matter within the discretion of the trial court," "the court may elect to require no security at all." *See BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (internal quotation marks and citation omitted). Here, considering Plaintiffs' financial status and the lack of prejudice to Defendants, the Court finds it appropriate to issue the temporary restraining order without requiring security.

[7] Considering Plaintiffs have established a substantial likelihood of success on the merits of their APA claim, the Court need not address whether Plaintiffs have established the same for their due process claim. *See Schiavo ex rel Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) ("To obtain temporary injunctive relief, [Plaintiffs] must show a substantial likelihood of success on *at least one* claim." (emphasis added) (citation omitted)).

The arbitrary and capricious standard under the APA, 5 U.S.C. § 706(2)(A), is "exceedingly deferential."[8] *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009). If an agency's "conclusions are rational," a court is not to substitute its judgment for that of an agency's. *Id.* An agency's decision is arbitrary and capricious only if: (1) "the factors the agency relied on are not what Congress would intend," (2) "the agency entirely failed to consider an important aspect of the problem," (3) "the agency offered an explanation counter to the evidence before the agency," or (4) "the agency action is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1291 (11th Cir. 2021) (internal quotation marks omitted) (citing *Miccosukee*, 566 F.3d at 1264).

Here, Plaintiffs have shown that USCIS offered an explanation—namely, that Mrs. Machado failed to provide a response to the NOID, or that Mrs. Machado misrepresented her marital status on a previous non-immigrant visa application— "counter to the evidence before" USCIS. *See id.*; (Doc. 23, pp. 16–19). As to the NOID response, Plaintiffs assert that USCIS acknowledged the timely receipt of Mrs. Machado's response after it denied Plaintiffs' I-485 applications for a failure to respond. (Doc. 23, pp. 16–17). With regard to Mrs. Machado's alleged misrepresentation, Mrs. Machado clarified this misrepresentation in her NOID

---

[8] The Court notes that Plaintiffs also allege a violation of 5 U.S.C. § 706(2)(D). (Doc. 1, ¶ 86). However, Plaintiffs have shown a substantial likelihood of success on the merits of an alleged violation of 5 U.S.C. § 706(2)(A), and thus, the Court does not reach § 706(2)(D) at this time. *See* case cited *supra* note 7.

8

response in which she provided USCIS a copy of a legal contract confirming her marital status at the time of her previous non-immigrant visa application. (*Id.* at pp. 17–19). Thus, USCIS' explanations for its denials of the I-485 applications run counter to the evidence Mrs. Machado submitted to USCIS. Consequently, Plaintiffs' have established a substantial likelihood of success on the merits of their APA, 5 U.S.C. § 706(2)(A), claim.

### B. Irreparable Harm in the Absence of a Restraining Order

Second, as to irreparable harm, Plaintiffs have established that the harms they face are "actual and imminent" rather than "remote" or "speculative." *See Siegel*, 234 F.3d at 1176 (citations omitted). If the Court were to deny Plaintiffs' request for a temporary restraining order, USCIS would be able to decide Mr. Moraes's I-485 application. Considering USCIS affirmed its denial of Mrs. Machado's I-485 application and considering Mr. Moraes is a derivative beneficiary of Mrs. Machado's application, USCIS will likely affirm its previous denial of Mr. Moraes's I-485 application.[9] As a result, Mr. Moraes would be unable to "continue using his employment authorization to lawfully work in the U.S." (Doc. 23, pp. 20–21; Doc 23-2, pp. 2–3). If Mr. Moraes is unable to lawfully work, Plaintiffs "will face severe economic and health harm that are irreparable." (*Id.*). As Plaintiffs emphasize, Mrs. Machado is unable to work due to the denial of her I-485 application, and thus, Mr. Moraes is the sole financial provider in their

---

[9] According to USCIS, it cannot approve a derivative beneficiary's I-485 application "until the principal applicant has been granted lawful permanent resident status." *See* DEP'T OF HOMELAND SEC., U.S. CITIZENSHIP & IMMIGR. SERVS., *supra* note 2, at p. 4.

9

household. (*See id.*). This financial burden has been exacerbated as Mrs. Machado is battling cancer and relies on Mr. Moraes to pay for her treatment. (*Id.*). Consequently, if USCIS were to reaffirm its denial of Mr. Moraes's I-485 application, Mr. Moraes would be unable to work and financially provide for Plaintiffs, which would result in irreparable harm to Plaintiffs.

### C. The Balance of Harms

Next, Plaintiffs have established that the harm they would suffer in the "absence of a restraining order would exceed the harm suffered" by USCIS if a restraining order is issued. (Doc. 23, pp. 21–22); *see Johnson & Johnson,* 299 F.3d at 1246–47. As discussed in Section III.B, Plaintiffs will suffer irreparable injury in the absence of a restraining order. In contrast, at this stage in the proceedings, the Court does not find that USCIS will be harmed upon issuance of a restraining order preventing it from deciding Mr. Moraes's I-485 application. As noted in the Complaint, USCIS reopened Mr. Moraes's I-485 application on April 16, 2024, after previously denying such an application. (Doc. 1, ¶ 78)

### D. Public Interest

Finally, Plaintiffs have shown that a temporary restraining order "would not disserve the public interest." *See Johnson & Johnson,* 299 F.3d at 1247. Here, a temporary restraining order would ensure "fairness in the application of U.S. immigration laws" as it holds USCIS accountable for its decisions and supporting explanations. (Doc. 23, p. 22). Moreover, considering Plaintiffs have demonstrated

their efforts to best comply with USCIS' process, granting their request for a temporary restraining order would not disserve the public interest.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiffs' Motion for Temporary Restraining Order (Doc. 23 (the "**Motion**")) is **GRANTED IN PART**.

    a. To the extent Plaintiffs seek a temporary restraining order, the Motion is **GRANTED**. Defendants and all its respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with Defendants are hereby **RESTRAINED** from denying Plaintiff Ricardo Batista Moraes's Form I-485 Application to Adjust Status for a period of fourteen (14) days. FED. R. CIV. P. 65. Should the Court find good cause to extend this period, the Court shall issue an Order doing so. *Id.*

    b. To the extent Plaintiffs seek a preliminary injunction, the Court defers ruling on such a request until Defendants file a response to the Motion.[10] Defendants may file one consolidated response to Plaintiffs' Motion (Doc. 23) on or before **October 1, 2024**.

---

[10] The Court prefers to decide Plaintiffs' request for a preliminary injunction on the briefings. As such, the Court does not require the benefit of an evidentiary hearing at this time. *See McDonald's Corp.*, 147 F.3d at 1312 (delineating the circumstances under which an evidentiary hearing under Rule 65 is required); *see also All Care Nursing Serv., Inc. v. Bethesda Memor'l Hosp., Inc.*, 887 F. 2d 1535, 1538 (11th Cir. 1989) ("Where the injunction

11

2. Plaintiffs are **DIRECTED** to immediately serve on Defendants by U.S. Mail and electronic mail the following materials:

   a. A copy of the Complaint (Doc. 1) and its exhibits;

   b. A copy of Plaintiffs' Motion (Doc. 23) and its exhibits;

   c. Copies of the documents set forth in Local Rule 6.01(c)(4) and Local Rule 6.01(c)(5); and

   d. A copy of this Order.

3. Plaintiffs shall certify their compliance with Paragraph 2 of this Order by filing a Notice of Compliance on or before **September 18, 2024**.

**DONE AND ORDERED** in Orlando, Florida on September 13, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

turns on the resolution of bitterly disputed facts, however, an evidentiary hearing is normally required to decide credibility issues." (citations omitted)).